UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ATLAS NOBLE, LLC, | ) | CASE NO. 5:13CV1505 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KRIZMAN ENTERPRISES, et al., | ) | **AND ORDER** |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is defendants' memorandum in support of permitting Counterclaim III to proceed to trial on damages. The Court has construed this memorandum as a motion. (Doc. No. 86 ["Motion"].) Plaintiff has filed a memorandum in opposition (Doc. No. 87 ["Opp'n"]), and defendants have filed a reply (Doc. No. 88 ["Reply"]). For the reasons set forth herein, defendant's motion is denied.

## I. BACKGROUND

On July 11, 2013, plaintiff Atlas Noble, LLC ("Atlas" or "plaintiff") filed its complaint against defendants Krizman Enterprises, Wayne Hammond Enterprises, Inc., and MKE Producing, Inc. (collectively, "defendants") asserting a single breach of contract claim based on defendants' alleged failure to authorize release to Atlas of a certain escrow account under the terms of a Purchase and Sale Agreement ("PSA") between the parties. (Doc. No. 1.)

Defendants answered, and counterclaimed for breach of contract, seeking a declaratory judgment that they are entitled to the escrow account plus an award of damages equal to the amount in the escrow account ($2,411.290.00) plus interest, along with damages in the

amount of the negotiated purchase price ($9,284,694.50), plus interest. (Doc. No. 8, as amended Doc. No. 37.)

On cross-motions for summary judgment with respect to the complaint and two counts of the counterclaim, this Court ruled, on February 5, 2015, that defendants were entitled to have the escrow account paid to them, plus interest.[1] The Court noted that neither side had sought summary judgment on defendants' third counterclaim for compensatory damages, but that "[i]n light of … the remedies contained in § 1.2 of the PSA for a failure to close the transaction, the Court questions whether defendants are entitled to proceed on this claim." (Doc. No. 73 ["MOO"] at 3280.)[2]

## II. DISCUSSION

A.    **The Parties' Respective Positions**

    1.    *Defendants' Position on Opening Brief*

Defendants argue that their Purchase and Sale Agreement ("PSA") with plaintiff allows a non-breaching party to seek compensatory damages in addition to recovering the escrow monies. They point specifically to PSA § 7.5, providing for waiver of consequential damages. (Doc. No. 86 at 3394.) Applying the canon of construction "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of the other), defendants argue that compensatory damages are notably missing from the list of types of damages waived by § 7.5.

According to defendants, where there is a breach of contract, compensatory damages should be awarded to place the injured parties in the position they would have been in

---

[1] Plaintiff subsequently filed a motion to alter or amend, but the Court adhered to its original ruling. (*See* Doc. No. 85 ["MOO-2"].) In MOO-2, the Court also indicated its intent to dismiss the third counterclaim and enter final judgment, absent a showing of good cause by defendants. That directive triggered the current briefing.

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

had the contract been performed. (*Id.* at 3394, citing *Livi Steel, Inc. v. Bank One, Youngstown, N.A.*, 584 N.E.2d 1267, 1272 (Ohio Ct. App. 1989).) Defendants assert that where, as here, the buyer anticipatorily repudiates a real estate contract, compensatory damages to the seller are calculated by showing "the difference between the original contract price and the ultimate purchase price or fair market value." (*Id.*, citing cases, but with no pinpoint citations.)

2. *Plaintiff's Position in Opposition*

Plaintiff points to PSA §§ 1.2 and 1.3 to support its view that the parties agreed to liquidated damages (i.e., the escrow amount), and that defendants cannot recover compensatory damages because that would constitute impermissible double recovery. (Doc. No. 87 at 3399.) Plaintiff finds further support for its argument in the same PSA § 7.5 cited by defendants. Plaintiff, however, emphasizes language in § 7.5 that defendants failed to quote in their brief, namely, that "such damage waiver is to be given the fullest effect, notwithstanding the negligence …, gross negligence, willful misconduct, strict liability or other legal fault of any party." Plaintiff also notes that the escrow account (originally $2,411,290.00) constitutes 26% of the contract price of $9,265,381.83 and is, therefore, "extremely generous compensation" under the circumstances.

Plaintiff also argues that, since defendants failed to retain a valuation expert to calculate the compensatory damages they claim entitlement to, they would be unable to meet their burden of proof as to any such damages, rendering the entire issue moot. In fact, plaintiff claims that, due to the "many market variables that an expert would have to consider before they [sic] could make an educated estimation regarding the value of the mineral subject to leases – at the time of the contract formation, when the breach occurred, or as of today[,] [t]he PSA's liquidated damage provisions are the practical answer to that question." (*Id.* at 3404.)

3

  *3.*  *Defendants' Reply*

  In addition to reiterating its original arguments, defendants' reply brief argues that the mere provision in a PSA of a requirement that the purchaser deposit funds in an escrow account does not mean that such provision is a liquidated damages clause. Defendants point out that, in a real estate purchase agreement, earnest money acts as "consideration for the privilege of keeping the offer open for a certain stated period of time." (Reply at 3413-14, quoting *Windsor v. Riback*, Nos. 2007-G-2775, 2007-G-2781, 2008 WL 1849617, at * 7 (Ohio Ct. App. Apr. 25, 2008) (quoting *Reedy v. Cincinnati Bengals, Inc.*, 758 N.E. 2d 678, (Ohio Ct. App. 2001) (Gorman, P.J. dissenting)).) Defendants assert that, when they entered into the PSA with Atlas, they agreed to forego other opportunities while Atlas conducted its due diligence. But Atlas chose to anticipatorily repudiate the PSA, thereby forfeiting the escrow account *and*, according to defendants, subjecting itself to a separate claim for breach, with resulting compensatory damages.

  Defendants also argue that no valuation expert is required to establish damages because, under the "owner-opinion rule," an owner of real estate is permitted to offer his opinion regarding the value of his own property. *Proctor v. Bader*, No. 03 CA 51, 2004 WL 1879060, at * 5 (Ohio Ct. App. Aug. 16, 2004) ("The general rule, in Ohio, is that a property owner is a competent witness to testify as to the value of his or her own property.").

**B.**  **Analysis**

  Whether defendants are entitled to separately pursue compensatory damages or must accept the escrow account as liquidated damages requires interpretation of the parties' PSA in light of controlling Ohio law. This Court must give effect to the parties' intent, which presumably rests in the language they chose to employ. *St. Marys v. Auglaize Cnty. Bd. of*

*Comm'rs*, 875 N.E.2d 561, 566 (Ohio 2007) ("The role of courts in examining contracts is to ascertain the intent of the parties. Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract."). In addition, "a contract is to be read as a whole and the intent of each part gathered from a consideration of the whole." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 35 (Ohio 2007). Therefore, "a court's construction should attempt to harmonize all provisions of the contract, and should not dismiss any provision as inconsistent if there exists a reasonable interpretation that gives effect to both." *Broad St. Energy Co. v. Endeavor Ohio, LLC*, 975 F. Supp. 2d 878, 884 (S.D. Ohio 2013).

The question here is whether PSA § 1.2 constitutes a liquidated damages clause or merely an earnest money clause that would not preclude an action for compensatory damages. "Liquidated damages are an agreed upon amount of money to be paid in lieu of actual damages in the event of a breach of the contract." *Gaskins v. Young*, No. 20148, 2004 WL 1178278, at *4 (Ohio Ct. App. May 28, 2004) (citation omitted). Such damages "constitute both the maximum and minimum damages available to a non-defaulting party[.]" *Id.* at *5. "Unlike liquidated damages, … a reasonable (and, therefore, enforceable) earnest money provision sets forth the minimum, but not the maximum, damages. When actual damages exist, the non-breaching party may also pursue specific performance or actual damages." *Id.*

The Court concludes that the parties' intent was that the escrow account would constitute liquidated damages, in lieu of actual damages.[3] PSA § 1.2 provided:

> **§ 1.2:** Within three days (3) days [sic] of the execution of this Agreement and upon receipt by the Bank of the completed CIP Questionnaire from each Seller, Buyer shall deposit as an earnest money deposit an amount in cash equal to one

---

[3] "Actual damages" are "an amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses. – Also termed *compensatory damages; tangible damages; real damages.*" DAMAGES, Black's Law Dictionary (10th ed. 2014).

5

> thousand dollars per net acre conveyed to Buyer, which amount is anticipated to be the sum of $2,411,290.00 (the "Escrow Amount"), assuming that Seller conveys to Buyer leases covering 2411.29 acres. The Escrow Amount shall be deposited into a jointly controlled account (the "Deposit Account") established by Buyer and Seller at Wells Fargo Bank, National Association (the "Bank"). If the transaction contemplated by this Agreement closes, then the Escrow Amount shall be forwarded by the Bank to Seller and the Escrow Amount shall reduce the Base Purchase Price as described in Section 1.3 below. If the transaction contemplated by this Agreement does not close because of Seller's failure to satisfy one of Buyer's Conditions to Closing as set forth in Section 6.2 hereof, then Bank shall return the Escrow Amount to Buyer. If the transaction contemplated by this Agreement does not close for any reason other than as set forth in Section 6.2, then Bank shall pay the Escrow Amount to Seller. The Parties shall execute such withdrawal instructions as the Bank shall require for the Bank to remit the Escrow Amount in the Deposit Account to the appropriate party as described in this Section 1.2. The costs and expenses associated with initiating, maintaining and distributing the Deposit Account shall be deducted from the distribution of the Escrow Amount and shall be borne solely by the recipient(s) of the Escrowed [sic] Amount; provided; [sic] however, that Seller's total costs associated with the escrow established with the Bank shall in no event exceed $3500.00 and Buyer shall pay any excess escrow costs and fees.

(Doc. No. 1-2 at 13.) The referenced § 6.2 set forth Atlas's conditions to closing. If these conditions were not met, under § 1.2, Atlas was entitled to a return of the escrow amount. But, if the deal failed to close for a reason other than failure of one of the buyer's conditions to closing, then defendants, as sellers, were to receive the escrow amount. This Court has already ruled that the agreement failed to close because Atlas repudiated it prior to the relevant deadline, giving defendants the right to recover the escrow amount.

Defendants agree that they should recover the escrow amount, plus interest, but they argue that PSA § 7.5 permits them to also recover compensatory (i.e., actual) damages. Section 7.5 provides:

> **§ 7.5:** <u>Waiver of Consequential Damages</u>. Notwithstanding any other provision of this Agreement, each party hereby expressly disclaims, waives and releases the other party from its own special, exemplary, punitive, consequential, incidental, and indirect damages (including loss of, damage to or delay in profit, revenue or production) relating to, associated with, or arising out of this Agreement and the

> transactions contemplated hereby. No law, theory, or public policy shall be given effect which would undermine, diminish, or reduce the effectiveness of the foregoing waiver, it being the express intent, understanding, and agreement of the parties that such damage waiver is to be given the fullest effect notwithstanding the negligence (whether sole, joint or concurrent), gross negligence, willful misconduct, strict liability or other legal fault of any party.

(Doc. No. 1-2 at 24-25.) Defendant would have the Court conclude that the lack of express mention of "compensatory damages" in § 7.5 entitles them to pursue such damages because they are not waived. Plaintiff relies upon § 7.5 to support its argument that the section must be given its "fullest effect" and, therefore, compensatory damages are also waived.

The Court is required to read § 7.5 together with § 1.2, in a manner that renders them consistent. *Broad St. Energy Co. v. Endeavor Ohio, LLC*, No. 14-4223/4278, 2015 WL 7074622, at *3 (6th Cir. Nov. 13, 2015 ("In Ohio, as elsewhere, courts do their best to give a fair reading to the contract, one requirement of which is to give content where possible to each term of the contract.") (citing *Farmer's Nat'l Bank v. Del. Ins. Co.*, 94 N.E. 834, 839 (Ohio 1911)). The Court concludes that recovery of the escrow amount under § 1.2 was intended to serve as liquidated (i.e., compensatory/actual) damages, and that § 7.5 was merely emphasizing that all *other* forms of damages (i.e., other than compensatory damages)[4] would be waived. This would be the only interpretation that would give the damage waiver in § 7.5 its "fullest effect notwithstanding the … legal fault of any party."

"When [liquidated damages provisions] are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced." *Priebe & Sons v. United States*, 332 U.S. 407, 411, 68 S. Ct. 123, 92 L. Ed. 32 (1947) (citations omitted).

---

[4] Every one of the other kinds of damages listed in § 7.5 are indirect types of damages, not actual, or compensatory, damages. See DAMAGES, Black's Law Dictionary (10th Ed. 2014). If a non-breaching party were allowed to pursue these damages, in addition to receiving the liquidated damages, that would effectively defeat the purpose of liquidated damages. The PSA was seeking to avoid that.

"They serve a particularly useful function when damages are uncertain in nature or amount[.]" *Id.*

Here, defendants bargained for the recovery of the escrow amount should the agreement not close through no fault of theirs. The parties intended that the escrow amount would either be put toward the purchase price in the event of closing, or would go to the non-breaching party in the event of a breach. If the buyer was the non-breaching party, it would get its money back. If the seller was the non-breaching party, it would receive the escrow amount by way of liquidated damages for both having lost the deal *and* having foregone other opportunities to sell to someone else. *See Broad St. Energy Co.*, *supra*, at *7 ("One could well imagine the strategic benefits of leaving damages at the $3.5 million escrow figure and avoiding the kinds of push-and-pull complications that would arise at trial over assigning values to the leases[.]"). The Court has previously determined that Atlas breached by anticipatorily repudiating the contract. This entitles defendants to recover the contractual liquidated damages, and no more.

To permit defendants to recover the escrow amount *and* compensatory damages would amount to double recovery. This is impermissible both under Ohio law, *see Mentor Lagoons, Inc. v. Laity*, No. 10-184, 1985 WL 9999, at * 1 (Ohio Ct. App. May 24, 1985) ("To allow a party to recover liquidated damages, as stipulated in the contract, and to also prove and recover actual damages allows a double recovery since liquidated damages are a pre-determined amount of what the actual damages will be in case of a breach."), and under the terms of the PSA between the parties.

### III. CONCLUSION

For the reasons set forth, defendants will not be permitted to proceed with their Counterclaim III. They bargained for, and received by order of this Court, liquidated damages in

the form of the escrow amount, plus any accrued interest. Therefore, the Court intends to dismiss Counterclaim III, issue final judgment, and close this case.

   **IT IS SO ORDERED**.

Dated: November 16, 2015

                _____
                **HONORABLE SARA LIOI**
                **UNITED STATES DISTRICT JUDGE**